PER CURIAM.
The plaintiffs, “Shield Club,” appeal from the judgment of the United States District Court for the Northern District of Ohio, 647 F.Supp. 274, denying their request for additional discovery of data in a race-discrimination case.
On October 21, 1985, forty-three cadets in the 95th Police Academy class were required to submit urine specimens. The assays, done by a professional laboratory and confirmed using another test, produced positive results for the presence of marijuana and other controlled substances for ten out of twenty minorities, and for three out of twenty-three non-minorities. The results were confirmed again for twelve of the thirteen cadets after submitting a second urine specimen. The thirteenth cadet did not take the second test.
The present action arises out of a controversy over a provision in an amended consent decree, entered between the parties on December 21,1984, which obligates defendant, the City of Cleveland, to provide to the Shield Club any data relevant to compliance with the provisions of the consent decree. In the body of this consent decree, the City had agreed to use only non-discriminatory hiring procedures. On November 5, 1985, counsel for plaintiffs sent a letter to defendant requesting documents relating to the October 21 drug/urine testing. In response, the City contended that the testing and relevant data fell outside the scope of the consent decree. Judge Thomas of the United States District Court for the Northern District of Ohio held a hearing at which he ordered the City to produce documents relating to the drug/urine testing for in camera inspection. Judge Thomas subsequently imposed a protective order on the documents at a second hearing held on February 7,1986, and counsel for plaintiffs were permitted to examine all of the documents subject to this order, although their experts were not permitted access to the data.
Judge Thomas then set up a briefing schedule on the question of whether a toxicologist’s examination of the data collected by the City could aid in determining potential discrimination. In their brief plaintiffs argued that the drug/urine test had an adverse impact on minorities and that the tests were invalid because they mistook melanin, a pigment found in the skin of many minority races, for marijuana and thus invalidly discriminated against minorities. On July 15, 1986, pursuant to the City’s motion, Judge Thomas ordered plaintiffs to supplement their affidavit with credible data and simultaneously ordered defendants to produce all documents related to urine tests conducted with respect to the police academy subsequent to the October 21 testing. On October 17,1986, Judge Thomas held a hearing for receiving the documents ordered, during which the City produced its documents but plaintiffs did not. On November 5, 1986, the Judge issued a supplemental memorandum and order in which he denied plaintiffs’ request for additional discovery of data relating to the urine testing of cadets since they were unable to make a prima facie case in support of their melanin theory. The judge also unilaterally modified the amended consent decree by requiring that the City utilize screening procedures that are “non-discriminatory or demonstrably job related” rather than the agreed upon “non-discriminatory and demonstrably job related.” Plaintiffs filed this appeal on December 4, 1986.
On appeal, plaintiffs argue that the district court abused its discretion in requiring appellants to make a prima facie showing on the merits in order to obtain relevant documents, since the amended consent de *140 cree automatically provides that all relevant data must be supplied by the City. Plaintiffs also argue that the court abused its discretion by unilaterally modifying the amended consent decree over their objections. In response, defendants argue that the court did not abuse its discretion on either charge.
Upon consideration of these arguments, the court is of the opinion that insofar as the trial judge construed the amended consent decree to require a further showing before plaintiffs would be permitted to have their experts examine the drug/urine test documents, the same amounted to an abuse of discretion. We do not believe that the retained right of plaintiffs to make the examination requested was contingent upon making out a prima facie case in support of their melanin or any other particular theory, but rather was warranted by the very language of the consent decree. Given the admittedly disparate impact of the tests on the racial composition of the cadets in the police academy, the decree should have made it possible for plaintiffs to acquire the necessary documents in ascertaining whether the tests and chemical analyses were accurately and fairly carried out. In so holding, we do not imply that the drug/urine test was in any way impermissible nor that evidence of drug injestion was not a valid, job related ground for testing the qualifications of the cadets. In such a case where there is a marked disparity in the impact of the test on the black and white individuals so tested, however, we are of the opinion that broad latitude should have been accorded plaintiffs under the consent decree to inquire into the testing procedures, and that the district court’s basis for denying plaintiffs the information was not justified under the circumstances.
Accordingly, the judgment of the district court is REVERSED and the cause REMANDED for further proceedings. In so ruling, we do not infer that the district court was without power to enter appropriate protective orders to protect the reputations of the individuals being tested or to prevent use of the information for purposes outside the objectives of the consent decree.